**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **GERALD LAWRENCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-CV-317-GLJ** |
| | ) | |
| **FRANK J. BISIGNANO,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Claimant Gerald Lawrence requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED AND REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton*, 79 F.3d at 1009. The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires Claimant to establish that he is not engaged in substantial gainful activity. Step two requires Claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If Claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that Claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if Claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

Claimant was forty-three years old at the time of the administrative hearing. (Tr. 48, 54). He has a high school education and has no past relevant work. (Tr. 40). Claimant alleges an onset date of January 1, 2022, due to severe depression, social anxiety disorder, chronic ankylosing spondylitis, hypertension, and "back and neck problem[s]." (Tr. 213).

**Procedural History**

On May 15, 2023, Claimant protectively applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 250-62, 266-69). On October 1, 2024, ALJ Luke Liter held an administrative hearing and determined Claimant was not disabled on November 25, 2024. (Tr. 26-75). The Appeals Council denied review, making the ALJ's opinion the Commissioner's final decision for purposes of this appeal. (Tr. 10-15); *See* 20 C.F.R. §§ 404.971, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. (Tr. 33-34). At step two he determined Claimant had the severe impairments of ankylosing spondylitis, obesity, depression, and anxiety. (Tr. 29). He found at step three that Claimant did not meet any Listing. (Tr. 30-33). At step four he found Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b) except Claimant is able to lift, carry, push or pull, 20 pounds occasionally and 10 pounds frequently, sit for six hours out of an eight-hour day, stand or walk for a combined six hours out of an eight-hour day, occasionally climb ramps, stairs, ladders ropes or scaffolds, and occasionally, kneel, stoop, crouch, and crawl. (Tr. 33). The ALJ also assessed

psychologically-based limitations that are not at issue here. The ALJ then concluded that although Claimant had no past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *i.e.*, marker, routing clerk, and power screwdriver operator. (Tr. 41).

**Review**

Claimant contends that the ALJ erred by failing to conduct a proper evaluation of his subjective statements of pain pursuant to Soc. Sec. R. 16-3p. The Court agrees.

The relevant medical evidence reveals that Claimant established care with Ezekial Onigbinde, M.D., on January 26, 2026, complaining of back pain that was somewhat relieved by Advil and reporting that he had previously been diagnosed with ankylosing spondylitis. (Tr. 433). Examination of Claimant's back revealed normal range of motion and no tenderness to palpation. (Tr. 433). X-rays of Claimant's cervical spine revealed mild to moderate degenerative change with larger anterior osteophytes throughout the lower cervical spine while x-rays of Claimant's thoracic were unremarkable. (Tr. 317-18, 431, 460, 463-64). A CT of Claimant's thoracic spine was performed in March 2022, with findings consistent with ankylosing spondylitis. (Tr. 319). Claimant followed up with Molly Hannagan, APRN, in July and August 2022 complaining of severe back pain and indicating that meloxicam and cyclobenzaprine helped minimally. (Tr. 423, 428). At both visits, examination revealed a positive bilateral straight leg test in addition to cervical, thoracic, and lumbosacral tenderness, and corticosteroid shots were administered. (Tr. 424, 429).

On August 19, 2022, a cervical spine CT showed bridging and near bridging osteophytes with moderate to marked disc space narrowing/rudimentary discs. (Tr. 310). In October 2022 Claimant established care with Richard Thomas of Tulsa Bone and Joint Associates, and examination revealed limited range of motion with cervical flexion, extension, and bilateral rotation, normal lumbar lordosis, a "slightly short-strided gait," and a negative seated straight leg test. (Tr. 326-27). Claimant followed up with Dr. Thomas on March 7, 2023, noting a "25% improvement with physical therapy." (Tr. 334). Examination revealed limited range of motion with flexion and extension of the cervical spine, limited range of motion of the lumbar spine, and tenderness to palpation of the bilateral upper trapezius and the intrascapular region in the midline, and an ultrasound guided corticosteroid shot was administered. (Tr. 335-37).

Claimant returned to Tulsa Bone and Joint on April 17, 2023, seeing rheumatologist William Surbeck, M.D., for continued back pain. (Tr. 329). Dr. Surbeck's treatment notes indicate Claimant "has a complete fusion of SI joints and very prominent bridging syndesmophytes in the lumbar spine with reports of similar changes on a thoracic spine MRI and also the involvement of the cervical spine." (Tr. 331). In October 2023 Dr. Thomas noted Claimant "performed [two] courses of physical therapy and has had some improvement in his symptoms. He does however continue to describe cervical and thoracic pain." (Tr. 408). Dr. Thomas referred Claimant to pain management for ongoing care and indicated there was "no role for additional orthopedic/operative intervention." (Tr. 408).

State agency physicians determined initially and upon reconsideration that Claimant could perform light work but could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds and only occasionally kneel, crouch, stoop, and crawl. (Tr. 80, 91).

At the administrative hearing, Claimant testified that he worked approximately twenty hours a week providing rideshare services through Lyft. (Tr. 54-55). He usually works for three to four hours a day but is unable to provide rideshare services more than twenty hours a week because some days he is unable to move due to pain. (Tr. 57, 63). The rides take approximately 15-20 minutes at a time and between rides he will get out of his vehicle and move around for approximately 5-10 minutes. (Tr. 66). Claimant testified that his ankylosis spondylitis causes him pain and stiffness which limits his range of motion. (Tr. 58). He indicated he can lift ten pounds, stand on his feet for only 15 minutes and can sit for only 15-20 minutes at a time without needing to stretch. (Tr. 60-61). In an eight-hour day he can only sit for 25% to 30% of the day. (Tr. 68). He lays down frequently, sometimes hours at a time, to relieve tension and has difficulties reaching overhead and bending down. (Tr. 63-64). The ALJ then elicited testimony from a vocational expert ("VE") to determine what jobs the claimant could perform given the RFC described above. (Tr. 71). The VE testified that such a claimant could perform the jobs of marker, routing clerk, and screwdriver operator. (Tr. 71). The ALJ then offered a modified hypothetical where the individual would be limited to sedentary exertion level with no climbing of ladders, ropes, and scaffolds, and only occasionally balancing. (Tr. 72). The VE testified such a claimant would could perform the jobs of parimutuel ticket checker, eyeglass frames polisher, and circuit board assembler. The ALJ then offered a third hypothetical in which

an individual would need to be away from the workstation up to ten minutes, on an unscheduled basis, for every hour they work. (Tr. 72-73). The VE testified such a person would be unemployable. (Tr. 73).

In his written opinion at step four, the ALJ summarized much of Claimant's hearing testimony and the medical evidence of record. (Tr. 34-35). He then found Claimant's statements about the intensity, persistence, and limiting effects of Claimant's symptoms were not entirely consistent with the treatment records. (Tr. 38). The ALJ found the opinion of state agency medical consultants persuasive, noting they were both supported by their review of the evidence and consistent with the longitudinal record. (Tr. 38-39).

Claimant argues the ALJ committed reversible error in analyzing Claimant's subjective statements by failing to articulate his reasons for disregarding Claimant's symptoms. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in alignment with the Commissioner's regulations but characterizes the

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[3] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

---

[3] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e.g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-94 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill*, 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*).

Under 20 C.F.R. § 404.1529, and as restated in Soc. Sec. R. 16-3p, "we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." 2017 WL 5180304, at *5. Although the ALJ extensively discussed virtually all of the evidence of record as it pertains to Claimant's ankylosing spondylosis and much of Claimant's hearing testimony, the ALJ wholly failed to explain his boilerplate conclusion with affirmative links to the record. His analysis of Claimant's subjective symptoms was therefore defective. *See, e.g.*, *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004). The ALJ's boilerplate language indicates the reasons for his findings are "explained in this decision"; however, the ALJ did not thereafter conduct any further analysis of Claimant's subjective symptoms. (Tr. 38). Instead, after noting the "the nature, scope, and findings from the longitudinal treatment records [d]o not support the intensity or persistence of [Claimant's] subjective allegations[,]" the ALJ provided a truncated reiteration of the medical evidence. (Tr. 40). This recitation provides, in full:

> On January 26, 2022, the claimant reported that he had back pain and neck pain that intermittently flared up. He stated that he got relief from Advil. At that time, the claimant was examined by Dr. Onigbinde and was found to have had full range of motion of his neck and normal range of motion in his back with no tenderness to palpation. He stated that the claimant had normal strength of his upper and lower extremities. CTs of the claimant's cervical, thoracic spine, and lumbar spine were consistent with ankylosing spondylosis. However, orthopedist Richard Thomas stated that the claimant was able to perform rapid movements without difficulty, he had good grip strength, wrist flexion, and wrist extension. He stated that the claimant was able to heel walk and toe walk. On October 26, 2023, Dr. Thomas stated that the claimant ambulated with a normal gait. He stated that the claimant had no gross neurosensory deficits or changes. On January 31, 2023, PA Wolfe

> stated that the claimant had full range of motion of his neck and of his extremities.

(Tr. 40) (internal citations omitted). A repeated recitation of the evidence, however, is not a substitute for analysis. For instance, based on this recitation it appears the ALJ discounted Claimant's symptoms based, in part, on Claimant's single report in January 2022 that Advil provided "some relief" of his symptoms. However, after January 2022, Claimant reported on several occasions that meloxicam and cyclobenzaprine only minimally reduce his pain, and Claimant received corticosteroid injections for his pain. Although the ALJ's initial recitation of the evidence acknowledges this, the ALJ's decision contains no analysis and it is entirely unclear to the Court how the ALJ weighed this evidence in considering Claimant's subjective statements or how, if at all, he considered the other factors set forth in 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3).

The Court is mindful that this "determination [is] peculiarly the province of the finder of fact" and it may not "upset such determinations when supported by substantial evidence" *Id.* But the Court "cannot ascertain whether substantial evidence supports the ALJ's . . . determination here because [his] analysis was incomplete." *Brownrigg*, 688 Fed. Appx at 546; *Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).

In sum, the ALJ did not sufficiently articulate his reasoning for discounting Claimant's subjective statements, and remand is necessary for him to conduct a proper

analysis and to explain his reasons for discounting Claimant's allegations. *Hardman*, 362 F.3d at 79-80 (rejecting ALJ's pain analysis as boilerplate, with no attempt to link factors to evidence where the claimant persistently complained of pain and sought treatment.). Because the ALJ failed to properly evaluate Claimant's subjective statements and comply with Soc. Sec. R. 96-8p, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ is instructed to consider *all* of the evidence in the record, both physical and mental, in assessing Claimant's RFC. If such analysis results in any adjustment to Claimant's RFC, the ALJ should then re-determine what work, if any, Claimant can perform and ultimately whether he is disabled.

**Conclusion**

In summary, the Court finds that the correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly hereby REVERSED, and the case REMANDED for further proceedings.

**DATED** this 26th day of August, 2026.



**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**